(110 So. 419)

No. 27566.

MERIWETHER SUPPLY CO. Inc., v. E. J. DEAS CO., Inc., et al.

(Nov. 2, 1926.)

(Syllabus by Editorial Staff.)

1. Sales ⬤188—Cost of sewer pipe not meeting specification in accordance with which seller agreed to furnish pipe may be deducted from purchase price.

Where seller agreed to furnish sewer pipe complying with specifications required of buyer constructing sewers, buyer is entitled to deduction from purchase price for pipe not meeting specifications and rejected by engineers.

2. Sales ⬤188.

Under contract for shipments f. o. b. point of delivery, buyer is entitled to credit on purchase price, for freight charges paid by it.

3. Sales ⬤188.

Buyer *held* entitled to deduction from purchase price of pipe sold for pipe repossessed by seller.

4. Sales ⬤168(3)—Superficial examination of sewer pipe by buyer's employee at point of delivery held not to preclude action for redhibition where examination by supervising engineers was done in trench.

Where sewer pipe was examined by engineers supervising buyer's construction at trench to determine whether it conformed to specifica-tions, superficial examination at station by employee of buyer was not such an inspection and acceptance by buyer at point of delivery precluding action for redhibition.

Appeal from First Judicial District Court, Parish of Caddo; E. P. Mills, Judge.

Suit by the Meriwether Supply Company, Inc., against the E. J. Deas Company, Inc., and another, in which defendant named reconvened. Judgment for plaintiff, and defendants appeal. Avoided and remanded with directions.

Lewell C. Butler, of Shreveport, for appellant E. J. Deas Co., Inc.

Spearing, Miller & Mabry, of New Orleans, for appellant United States Fidelity & Guaranty Co.

Cook & Cook, of Shreveport, for appellee.

BRUNOT, J. This is a suit against the E. J. Deas Company, Inc., and its surety, the United States Fidelity & Guaranty Company, for the alleged balance due the plaintiff for sewer pipe sold and delivered to E. J. Deas Company, Inc., for use in the construction, under a contract with the city of Shreveport, of a line of sewer for that city.

The petition alleges that the purchase price of the pipe sold and delivered was $23,-734.87; that the E. J. Deas Company was credited with $9,779.64 paid thereon; and that the balance, or $13,955.25, was past-due and unpaid. The prayer is for a judgment against the defendants, in solido, for that sum.

The defendants filed a joint answer in which they deny any indebtedness whatever to the plaintiff and in which the E. J. Deas Company, Inc., reconvenes and prays for a judgment, in reconvention against the plaintiff, for $14,821.19 for this, to wit: 3,076.5 feet of 24″ pipe and 226 feet of 30″ pipe, the purchase price of which was $6,312.98 and $1,307.76, respectively, which was rejected by the supervising engineers in charge of the

work; 227 feet of 24″ pipe which was partially rejected by said engineers and classed as No. 2 pipe, but the use of which was allowed by the city at a valuation of $1.25 per foot, or $283.75, when the invoice price thereof is $465.80; $2,191.53, the price E. J. Deas Company had to pay in the open market for pipe to replace the rejected 24″ pipe, in excess of the contract price of said pipe, and $83.05 freight charges for the transportation of the pipe thus purchased; $155.22 for 30″ pipe purchased in the same manner and for the same reason, in excess of the contract price thereof, plus $6.05 freight charges thereon; $838.12 drayage charges for removing the pipe which was subsequently rejected, from the railroad station at Ardis to the location of the sewer work; $1,208.89 freight charges paid on the pipe delivered by plaintiff under the contract; and $1,239.38, the value of 582 feet of 24″ pipe and 12 feet of 30″ pipe which was consigned to defendant and delivered at Ardis but which plaintiff retook possession of and hauled away; $8,102.94 for labor expense caused by the nonshipment of pipe promptly; $4,042.50 for office salaries made necessary by the delays in the delivery of pipe; $2,083.33 depreciation of machinery while idle from said cause; and $2,400, the penalty of $20 per day for 120 days, as fixed in the contract for the sewer work, for the failure of E. J. Deas Company, Inc., by reason of the delays in the shipment of pipe and the failure of plaintiff to replace the rejected pipe, to complete the contract within the time limit fixed therein.

On these issues the case was tried, and from a judgment in favor of plaintiff and against the defendants, in solido, for the full amount prayed for in the petition, and legal interest thereon, less a credit of $35.91, entered as a remittitur, and rejecting all of the items of the reconventional demand of E. J. Deas Company, Inc., both defendants appealed.

The contract between the E. J. Deas Company, Inc., and the Meriwether Supply Company, Inc., consists merely of a letter from the former company authorizing the latter company to order for the account of E. J. Deas Company, Inc., 14,730 feet of terra cotta pipe, double-strength, for use in constructing a sewer according to the plans and specifications of the J. N. Chester Engineers, and a letter from the Meriwether Supply Company, Inc., accepting the order. The two letters follow:

"Shreveport, La., Aug. 21, 1924.

"Meriwether Supply Company, City—Gentlemen: This is to authorize you to order for our account the following quantities of terra cotta pipe for use in constructing the Bayou Pierre sewer contract according to plans and specifications of the J. N. Chester Engineers: 13,750 lin. ft. 24″ double-strength. 980 lin. ft. 30″ double-strength.

"It is understood in accepting your price for this material that the 24″ pipe will be shipped from Texarkana, Texas, and billed to us at Ardis, La.; that the thirty-inch pipe will be shipped from St. Louis, Mo., and billed to us at Shreveport. All shipments to be routed to arrive by T. & P. Railway (T. S. & N. Branch). That you will issue credit memorandum to us for any breakage and handle claims for same through your office.

"In addition to the above we will need one only sixteenth bend special, size twenty-four inches.

"We ask that you have shipments start Monday, August 25th, at the rate of two cars per day until further notice.

"Please acknowledge receipt.

"Very truly yours,

"E. J. Deas Company, Inc."

"Shreveport, La., Aug. 30, 1924.

"E. J. Deas Company, 234 Ward Building, City—Gentlemen: We thank you for your order placed with us recently covering your sewer pipe requirements for use in constructing the Bayou Pierre sewer award. We wish to confirm prices as follows:

"13,750 lin. ft. 24″ double-strength Vit. sewer pipe No. 1 $2.052.

"980 lin. ft. 30″ double-strength Vit. sewer pipe No. 1 $3.76.

"The above prices carry a discount of 5% for payment of invoice within ten (10) days and are f. o. b. Ardis and Shreveport, Louisiana, respectively. We have not as yet received prices covering one 24″–¹⁄₁₆ bend.

"We note you wish us to file claims with the railroad covering any damaged pipe received by you, and knowing the attitude railroads assume in handling claims, we will agree to handle matter as you suggest provided you take responsibility of having railroad company make proper notation of damages or shortage on freight bills covering car affected. We will then file claim in accordance with notation, on freight bill, and will credit your account immediately upon receipt of payment of claim by railroad company.

"We were led to believe that shipment of 24" sewer pipe was to be made from Texarkana, Texas, but learned after order had been placed sewer pipe shipment would come from Deepwater, Mo.

"We have had matter up with Texarkana Pipe Works, on several occasions to rush shipments all possible, and they tell us they are doing everything in their power to have pipe shipped promptly.

"We again thank you for placing order with us, and assure you that we will use our best endeavors to handle it to your entire satisfaction.

"Yours very truly,
Meriwether Supply Co., Inc.
"By W. E. Webb, Sales Manager."

[1-3] The plaintiff company is domiciled and conducts its business in the city of Shreveport. The pipe purchased through plaintiff was to be used for certain sewerage purposes of that city. The answer alleges, and the proof, as a whole, is strongly persuasive of the fact, that plaintiff had full knowledge of the plans and specifications governing the contract award to defendant for the construction of the sewer. The contract between the plaintiff and the E. J. Deas Company calls for No. 1 double-strength, vitrified sewer pipe. The evidence shows that a quantity of 24" pipe was classed by the supervising engineers of the work as No. 2 pipe, and valued by them at less than one-half of the invoice price thereof, while recovery of the invoice price is sought in this suit. This contract shows that the E. J. Deas Company proposed to purchase such material as would enable it to comply with the specifications of the J. N. Chester Engineers, and this proposal was accepted by the plaintiff. The evidence shows that an unusually large percentage of the pipe delivered did not meet the requirements of the specifications and was rejected as unfit for the use for which it was intended, and plaintiff has made no deduction therefor in the account herein sued upon. The evidence shows that the E. J. Deas Company paid more than a thousand dollars freight charges on the pipe plaintiff delivered to it, and the account sued upon does not show a credit for these payments, when the contract specifically provides that all of the pipe shipments shall be f. o. b. Ardis and Shreveport, La. The contract of purchase provides for the delivery of No. 1 double-strength pipe. There is no proof in the record that any of the pipe shipped by plaintiff was No. 1. We assume that it was because a large percentage of the pipe delivered was accepted and used in the work; but, be that as it may, the equities are so strongly in favor of the defendant, the Deas Company, in the respects mentioned, and that company is so manifestly entitled to a refund or credit for the freight charges paid by it, and for the invoice price of the pipe plaintiff hauled away, that this case must be remanded in order that such supporting and countervailing proof may be offered thereon as will definitely fix the exact credits to which the E. J. Deas Company is entitled, in order that we may render a correct and righteous judgment in the case.

[4] It is contended that the pipe was inspected and accepted by the E. J. Deas Company at the points of delivery, and therefore an action in redhibition cannot be sustained; that the burden of proof is upon the purchaser of movable property, who has accepted it, to show its defects. The record shows that there was a superficial examination of the carloads of pipe as it arrived at the station by an employee of the Deas Company, but the examination by the supervising engineers, to determine whether the pipe con-

formed to the pipe specifications in the contract for the work, was made at the trench, and the engineers declined to inspect it elsewhere. The testimony abundantly shows that a large quantity of the pipe was defective. There are other contentions, but as we have concluded that this case should be remanded for the purposes enumerated and that all of the issues of the case should be decided at one time, we will not now refer to them.

For these reasons the judgment appealed from is avoided, and this case is remanded to be tried according to law and the views herein expressed.